**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LOWER TOWN PROJECT, LLC,

        Plaintiff,

v.                                   Case No. 10-11615

LAWYERS TITLE INSURANCE
CORPORATION,

        Defendant/Third-Party Plaintiff,

v.

SCOTT CHAPPELLE, et al.,

        Third-Party Defendants.

_____/

**ORDER (1) GRANTING THIRD-PARTY PLAINTIFF'S "MOTION IN LIMINE NO. 2
DETERMINING THE ADMISSIBILITY OF THE DEPOSITION OF JOHN CLINTON
HINDS, JR. AT TRIAL," (2) GRANTING IN PART AND DENYING IN PART THIRD-
PARTY DEFENDANTS' "MOTION IN LIMINE," AND (3) GRANTING IN PART AND
DENYING IN PART THIRD-PARTY PLAINTIFF'S "MOTION IN LIMINE NO. 3 FOR
ADMISSION OF ITS TRIAL EXHIBITS"**

Before the court are three motions in limine pending in this matter, all presenting

questions regarding the admissibility of various evidence Third-Party Plaintiffs wish to

offer at trial.  Also at issue is Third-Party Defendants' contention that some of Third-

Party Plaintiff's witnesses should be excluded due to a failure to identify them during

discovery.  The motions have been fully briefed, and the court determines a hearing is

not necessary.  *See* E.D. Mich. LR 7.1(e)(2).  For the following reasons, the court will

grant Third-Party Plaintiff's motion to admit the deposition of John Clinton Hinds, Jr., will

grant in part and deny in part Third-Party Defendants' motion in limine to exclude

various testimonial and documentary evidence, and will grant in part and deny in part Third-Party Plaintiff's motion to admit the balance of its trial exhibits, the denial being without prejudice to Third-Party Plaintiff's ability to move for the admission of those exhibits at trial.

### 1.  Deposition of John Clinton Hinds, Jr.

Third-Party Plaintiffs request the admission of the deposition of John Clinton Hinds, Jr., a representative of Lower Town Project, LLC, taken on February 6, 2012, for the purpose of having Mr. Hinds's testimony read aloud at trial.  In advance of the deposition, Third-Party Defendants filed a motion for protective order seeking to prevent it on the grounds that Third-Party Plaintiff had not specifically identified Mr. Hinds as a potential witness in discovery.  After a telephonic hearing on that motion, the court denied it and allowed the deposition to proceed as scheduled.  Third-Party Defendants now reiterate their objection based on Third-Party Plaintiff's failure to name Hinds as a witness until the parties filed the Joint Final Pretrial Order in January 2012.

In accordance with the court's ruling on Third-Party Defendants' related motion for a protective order, the court will not prohibit the use of the deposition of Mr. Hinds at trial.  A party must supplement its discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless." Fed. R. Civ. P. 37(c)(1). "A party requesting exclusion under

Rule 37(c)(1) need not show prejudice; rather, the burden is on the non-moving party to

show that the non-disclosure was harmless or substantially justified. When the

non-moving party fails to show as much, case law suggests that exclusion is

mandatory." *SPX Corp. v. Bartec USA, LLC*, 574 F. Supp. 2d 748, 757 (E.D. Mich.

2008) (citing *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976,

983 (6th Cir. 2004) and *Samos Imex Corp. v. Nextel Commc'ns, Inc.*, 194 F.3d 301, 305

(1st Cir. 1999)).

During discovery in this matter, Third-Party Plaintiff identified "[p]ast and present

employees and agents of Lower Town Project, LLC," as possible witnesses, (Lawyers

Title Interrog. Ans. 3, Dkt. # 86-7), Lower Town Project (as former Plaintiff) specifically

listed Hinds as a potential trial witness, and Hinds both served as the representative of

Lower Town Project for the purposes of responding to discovery requests and signed

multiple key documents that were provided in discovery and will be introduced at trial.

Third-Party Plaintiff alleges that, during pretrial preparation, it contacted Lower Town

Project's counsel as to who would be available to testify at trial as a representative of

Lower Town Project, and counsel named Mr. Hinds. After so learning, Third-Party

Plaintiff listed Mr. Hinds as a witness in the Joint Final Pretrial Order.

Given that Mr. Hinds was a known representative of Lower Town Project

throughout discovery, and Lower Town Project did include him on its witness list, it

seems that his role as a witness in this case was "otherwise . . . made known to Third-

Party Defendants" such that Third-Party Plaintiff's duty to supplement its discovery

requests was not triggered. *See* Fed. R. Civ. P. 26(e). At the least, even if Third-Party

3

Plaintiff neglected to supplement its discovery responses as required, any failure is harmless.  Third-Party Defendants knew that Third-Party Plaintiffs intended to call a Lower Town Project representative at trial, had information that Mr. Hinds was likely to be that representative, and had the opportunity to depose Mr. Hinds during discovery.

As to the substance of the deposition, Third-Party Plaintiff has proposed a number of redactions, and Third-Party Defendants have offered objections to some of those and advanced some additional redactions.  (*See* Hinds Dep., Feb. 6, 2012, Dkt. # 97-1, 97-2.)  The court has carefully considered the suggested redactions and rules as follows:

- All of the agreed-to redactions listed in Third-Party Defendants' response are ADOPTED, including redactions from Third-Party Plaintiff to which Third-Party Defendants did not specifically object.

- Third-Party Plaintiff's redaction of 12:4-5 is REJECTED.  The redaction reflects an unwarranted alteration of the witness's testimony.

- Third-Party Plaintiff's redaction of 18:16 is ADOPTED.  The redaction is a permissible clarifying edit to the witness's testimony.

- Third-Party Defendants' objections to the form of the question at 20:24-21:5, 21:15-16, and 21:23-22:2 are OVERRULED.  Accordingly, Third-Party Defendants' redaction of 20:19-23, 21:11-14, and 21:17-22 is REJECTED.

- Third-Party Defendants' foundation objection at 27:11 is OVERRULED.  Accordingly, Third-Party Defendants' redaction of 27:6-10 and 27:17 is REJECTED.

- Third-Party Defendants' foundation objection at 37:3 is OVERRULED.  Accordingly, Third-Party Defendants' redaction of 36:25-37:2 and 37:4 is REJECTED.

- Third-Party Defendants' speculation objections at 38:21-22 and 39:11-12 are SUSTAINED.  Accordingly, Third-Party Defendants' redaction of 38:17-39:14 is ADOPTED.

4

- Third-Party Defendants' foundation objection at 40:21 is OVERRULED. Accordingly, Third-Party Defendants' redaction of 40:18-20 and 40:22 is REJECTED.

- Third-Party Plaintiff's redaction of 43:15 is ADOPTED. The redaction is a permissible clarifying edit to the witness's testimony.

- Third-Party Defendants' speculation objections at 44:16-22 and 45:9-10 are OVERRULED. Accordingly, Third-Party Defendants' redaction of 44:13-14, 44:23-45:8, and 45:11-20 is REJECTED.

- Counsel's foundation objections at 49:22 and 50:4 are SUSTAINED. Accordingly, Third-Party Defendants' redaction of 49:21-50:5 is ADOPTED.

- Third-Party Defendants' continuing objection at 51:8-13 is SUSTAINED. As discussed below in Section 3, the terms of the settlement agreement in *Conestoga-Rovers & Associates, Inc. v. Lower Town Project, LLC*, are not admissible. Accordingly, Third-Party Defendants' redaction of 52:7-10, 52:15-53:3, 53:14-54:14 is ADOPTED. Third-Party Defendants' redaction of 52:11-14, 53:4-13, 54:15-19, and 55:23 is REJECTED, as the questions and testimony relate to stipulated facts or are unrelated to the settlement agreement.

- Third-Party Plaintiff's redaction of 55:13-20 is REJECTED. The redaction reflects an unwarranted alteration of the witness's testimony.

- Third-Party Defendants' hearsay objection at 58:17 is SUSTAINED. Accordingly, Third-Party Defendants' redaction of 58:15-20 is ADOPTED.

- Third-Party Defendants' continuing objection at 59:8-19 is OVERRULED. As discussed below in Section 4, the May 7, 2009 letters to Strathmore Development Group Michigan, LLC, ("Strathmore") are admissible to show the termination of Strathmore's management of the Broadway Village project. Counsel's questioning about the documents is confined to this permissible purpose. Accordingly, Third-Party Defendants' redaction of 59:6-7, 59:21-24, and 60:7-61:13 is REJECTED.

- Third-Party Plaintiff's objections at 66:19-20, 67:9, and 68:4-5 regarding the scope of the direct are OVERRULED, as is Third-Party Plaintiff's speculation objection at 68:4-5. Accordingly, Third-Party

5

Plaintiff's redaction of 66:15-18, 66:22-67:8, 67:10-68:3, and 68:6-11 is REJECTED.

- Third-Party Plaintiff's speculation objection at 68:16-17 is SUSTAINED.  Accordingly, Third-Party Plaintiff's redaction of 68:13-69:4 is ADOPTED.

- Third-Party Plaintiff's relevance objection at 69:11 is SUSTAINED. Accordingly, Third-Party Plaintiff's redaction of 69:9-12 is ADOPTED.

- Third-Party Plaintiff's relevance objection at 69:16 is OVERRULED. Accordingly, Third-Party Plaintiff's redaction of 69:14-15 and 69:17-22 is REJECTED.

- Third-Party Plaintiff's relevance objection at 71:23 is OVERRULED. Accordingly, Third-Party Plaintiff's redaction of 71:18-22 and 71:24-25 is REJECTED.

- Counsel's objection at 74:7-8 is SUSTAINED.  As discussed in the court's February 27, 2012 order, it is an open question whether the construction liens fell within a policy exclusion, but the issue of whether the liens attached prior to the policy date was decided in the summary judgment order.  Thus, while evidence regarding the former proposition may be relevant, testimony on the latter contention is irrelevant.  Accordingly, Third-Party Plaintiff's redaction of 73:7-74:12 is ADOPTED.

## 2. Deposition of Third-Party Defendant Scott Chappelle in Prior Litigation

Third-Party Defendants raise several issues in their motion in limine, the first being an objection to one of Third-Party Plaintiff's proposed exhibits: the deposition of Chappelle taken in the Washtenaw County Circuit Court action that formed the basis of Plaintiff's title-insurance claim.  Third-Party Defendants assert that admission of the deposition transcript is foreclosed by a stipulated protective order entered by the state court, which provides that "information produced at the deposition of Scott Chappelle, including but not limited to documents produced, exhibits and the transcript thereof ('Confidential

Information') shall be maintained in confidence by counsel for the parties" and "shall not be used or communicated to anyone except in connection with this litigation." (Stipulated Protective Order ¶¶ 1, 2, Dkt. # 86-2.)

Third-Party Plaintiff responds that it is allowed to use Chappelle's deposition "to show inconsistencies in [his trial] testimony" and "to introduce his admissions at trial," notwithstanding the state court's protective order. (Third-Party Pl.'s Br. Opp'n Motion in Limine 2, Dkt. # 95.) Third-Party Plaintiff argues that it obtained the deposition transcript in accordance with the terms of the order, either pursuant to Lower Town Project's efforts to have it intervene in the state-court action or based on the subpoena *duces tecum* it served on Lower Town Project in the instant litigation. Moreover, it asserts that Third-Party Defendants have offered no authority precluding the deposition's use on based on the protective order, especially since it was "demanded" by Chappelle in an effort to "limit his testimony" and "hide his bad acts" in that case. (*Id.* at 1.)

The court agrees with Third-Party Plaintiff that Chappelle's deposition is not inadmissible by reason of the state court's protective order. As Third-Party Plaintiff points out, Third-Party Defendants cite no federal rule or case law that precludes admissibility of a document solely because it is subject to a protective order in another case. Rather, "[a] deposition lawfully taken and, if required, filed in any federal- or state-court action . . . may . . . be used as allowed by the Federal Rules of Evidence." Fed. R. Civ. P. 38(a)(8). Chappelle's prior out-of-court statements are admissible against him as statements of an opposing party, *see* Fed. R. Evid. 801(d)(2)(A), and, if used to impeach his trial testimony, as

7

prior inconsistent statements given under oath, *see id.* 801(d)(1)(A). Quite simply, the court could discern no exception to these general rules when the prior deposition was covered by a protective order issued by a state court.

That is not to say, however, that a state court's protective order will never impact the disclosure or use of a document in federal court. The existence of a prior, state-court protective order may provide "good cause" for limiting discovery, *see* Fed. R. Civ. P. 26(b)(1), and could in some circumstances justify quashing a subpoena for the protected information, *Tubar v. Clift*, No. C05-1154JCC, 2006 WL 521683, at *4 (W.D. Wash. Mar. 2, 2006); *see* Fed. R. Civ. P. 45(c)(3)(A)(iv) (requiring court to quash or modify subpoena that "subjects a person to undue burden"). But while a federal court will not "permit[] a party to flout a state court protective order simply because documents in a state action might prove useful in a separate federal action," *Washington v. New Orleans City*, 424 F. App'x 307, 311-12 (5th Cir. 2011), it is not bound to follow or enforce such an order. This proposition is reflected in the protective order at issue here, which acknowledges that Chappelle's deposition and related documents must be disclosed pursuant to a third party's subpoena or a "court order seeking documents." (Stipulated Protective Order ¶ 7.)

Here, Third-Party Plaintiff obtained the deposition transcript by means entirely consistent with the state court's protective order: it served a subpoena *decus tecum* on Lower Town Project, which turned over the documents. At that point, Third-Party Plaintiff had Chappelle's deposition for the purposes of discovery in this case, and nothing in the protective order can be read to prevent

Third-Party Plaintiff's further use of the deposition in this litigation. *Cf. Maple Creek Commons Homeowners Ass'n v. State Farm Fire & Cas. Co.*, No. 1:08-cv-00475-TWP-MJD, 2012 WL 14022, at *6 (S.D. Ind. Jan. 4, 2012) (determining party "does not have" report subject to state-court protective order for purposes of federal litigation when party obtained report in state-court action and was thereby bound by terms of protective order). If Third-Party Defendants believe that Plaintiff or Third-Party Plaintiff violated the protective order in the chain of events leading to this point, their recourse is with the Washtenaw County Circuit Court. This court sees no reason to exclude Chappelle's deposition based upon the Federal Rules or the terms of the protective order.

Third-Party Defendants also contend that the deposition is inadmissible because: they have stipulated to the admission of an examination under oath of Chappelle taken by Third-Party Plaintiff's current counsel; Third-Party Plaintiff had the opportunity to depose Chappelle in the current action but chose not to do so; and, in any case, the deposition "would tend to confuse the issues and mislead the jury" contrary to Federal Rule of Evidence 403 because it "relates to a prior case concerning different claims." (Third-Party Def.'s Br. Supp. Motion in Limine 3, Dkt. # 86.) Like Third-Party Plaintiff, the court fails to see how the existence or non-existence of other sworn testimony by Chappelle in this action is relevant to the question of whether the deposition is admissible. As for the Rule 403 objection, the court cannot sustain it outright. The state-court action gave rise to Plaintiff's claim against Third-Party Plaintiff and, as such, indirectly precipitated the claims between Third-Party Plaintiff and Third-Party Defendants.

9

Depending upon the context in which the information regarding the original action is presented to the jury, it may elucidate, rather than confuse, the issues to be decided at trial.  For these reasons, the court will deny Third-Party Defendants' motion in limine as to Chappelle's deposition, subject to their right to bring specific relevancy objections at trial.

### 3.  Settlement Agreement in the *Conestoga* Case

Next, Third-Party Defendants seek to prevent Third-Party Plaintiffs from admitting into evidence the settlement agreement that resolved the state-court construction-lien litigation, *Conestoga-Rovers & Associates, Inc. v. Lower Town Project, LLC*.  The parties have stipulated to the fact that "[Lower Town] Project resolved the construction lien litigation by paying $1.6 million to the lien claimants."  (Joint Final Pretrial Order 5, Jan. 11, 2012, Dkt. # 74.)  Third-Party Defendants oppose the admission into evidence of the settlement agreement itself, noting that it contains a confidentiality clause:

> 13.  **Confidentiality**. The parties agree that they will keep the terms and amounts set forth in this Agreement and the allegations made in the Lawsuit, completely confidential and will not disclose any information concerning these matters to any person or entity not a party hereto, except: (a) their attorney, accountant, insurer, or tax advisor who agree to abide by this confidentiality provision; (b) to the extent necessary to report income to appropriate taxing authorities as expressly required by law; or (c) in response to a specific court order, subpoena or legal process signed by a judge with competent jurisdiction which orders the disclosure of the nature, content, substance, conditions or specific terms of the Agreement or the underlying facts relative to the lawsuit.

(Settlement Agreement & Release ¶ 13, Dkt. # 86-3.)  Furthermore, Third-Party Defendants aver that the settlement agreement is inadmissible evidence of the

10

compromise of a disputed claim under Federal Rule of Evidence 408.  Third-Party Plaintiff counters that its status as Lower-Town Project's insurer precludes it from violating the confidentiality requirement and that it does not intend to offer the agreement to prove or disprove Third-Party Defendants' liability on the construction liens.

Third-Party Defendants persuasively argue that the terms of the Settlement Agreement should be excluded under Rule 408.  Under that provision, evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise [a disputed] claim" is "not admissible—on behalf of any party—either to prove or disprove the validity or amount of [the] claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  Third-Party Plaintiff attempts to get around this bar by claiming that its use of the settlement agreement falls within the Rule's exception, applicable when such evidence is offered "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  Fed. R. Evid. 408(b).  To this end, Third-Party Plaintiffs maintain that it "intends on introducing the Settlement Agreement to contradict Chappelle's argument that monies were not owed to Conestoga and to show a source of [its] obligation to pay out damage in this case."  (Third-Party Pl.'s Br. Opp'n Mot. in Limine 4.)  However, arguments as to whether or not monies were owed to the contractors working on the Broadway Village property goes to the very heart of the validity of the construction-lien

11

claims and must be considered improper uses of the Settlement Agreement under Rule 408. As for Third-Party Plaintiff's need to demonstrate that Third-Party Plaintiff's obligation to Lower Town Project depends in part on the state-court settlement, Third-Party Defendants have stipulated to the fact that a settlement occurred, as well as to the total amount paid to the lien claimants. The specific terms of the Settlement Agreement are of no further relevance to determining Third-Party Plaintiff's obligation to Lower Town Project based on the title insurance policy.

Alternatively, the confidentiality clause of the Settlement Agreement might also preclude Third-Party Plaintiff from revealing the terms of the settlement. Unlike the protective order covering Chappelle's deposition, which was superceded when Third-Party Plaintiff obtained the deposition pursuant to a subpoena, the confidentiality provision expressly binds Third-Party Plaintiff: by Third-Party Plaintiff's own account, it received the agreement from Lower Town Project as its insurer, which disclosure carried the condition that Third-Party Plaintiff agree to abide by the confidentiality provision. Some courts have held that an agreement to keep settlement negotiations confidential constitutes an independent ground for excluding evidence related to those negotiations, even if such evidence falls within the exception of Rule 408. *See Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.*, 407 F. Supp. 2d 401, 403-04 (D. Conn. 2006). The court will grant Third-Party Defendants' request to exclude the *Conestoga* settlement agreement from evidence.

### 4. May 7, 2009 Letters to Strathmore

12

Third-Party Defendants also move to exclude two letters sent on May 7, 2009, to Strathmore by an attorney acting for the entity controlling the Broadway Village development.  The letters notify Strathmore of the termination of the Property Management Agreement and the Development Agreement relating to Broadway Village.  Third-Party Defendants aver that both letters are hearsay under Federal Rule of Evidence 801.  Additionally, they claim the letters are irrelevant under Federal Rule of Evidence 401, as Third-Party Plaintiff's claims involve allegedly false statements about work done on the Broadway Village property before or around November 2007.  Third-Party Plaintiff contests both assertions.

Normally, the court would defer ruling on this objection until the potential relevancy of and any hearsay arguments about the disputed evidence could be developed at trial.  In this case, however, the deposition testimony of Mr. Hinds, which the court will admit as trial testimony as discussed above, provides sufficient context for the letters to allow the court to determine admissibility at this time.

First, Mr. Hinds confirmed that the letters are "formal termination[s]" of the Property Management Agreement and the Development Agreement.  (Hinds Dep. 61:2-6; *accord id.* at 59:21-24.)  As such, they have "legal significance independent of the truth of any statement contained in [them, and are] not hearsay." *Padilla v. United States*, 58 Fed. Cl. 585, 593 (2003) (citing Fed. R. Evid. 801(c) advisory committee's note and *Kepner-Tregoe, Inc. v. Leadership Software, Inc.*, 12 F.3d 527, 540 (5th Cir. 1994)).  In other words, the letters

13

legally ended the contractual relationship between Strathmore and the owners of Broadway Village, making them verbal acts to which the law attaches duties and liabilities.  *See* 2 Kenneth S. Broun, *McCormick on Evidence* § 249 (6th ed. 2007).  When offered to show the termination of the agreements, as Third-Party Plaintiff did in Mr. Hinds deposition, they are not hearsay.  *See Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992) (admitting as non-hearsay correspondence from attorney "discussing changes in [a] contract's terms and conditions," when "offered to show the making of the contract").

Second, Mr. Hinds's testimony shows the relevancy of the termination of the Property Management Agreement and the Development Agreement. Specifically, Third-Party Plaintiff's counsel demonstrated through his questioning that the Broadway Village owners, Mr. Hinds's clients, ended their contractual relationship with Strathmore because of "the existence of construction liens against the property and Mr. Chappelle's inability to explain where certain monies had gone."  (Hinds Dep. 61:7-13.)  These issues are clearly relevant to Third-Party Plaintiff's claims that Chappelle misrepresented the facts surrounding those construction liens.  The court will overrule Third-Party Defendants' objections to the admission of the termination letters and to Mr. Hinds's deposition testimony about those exhibits.

### 5.  Proposed Witnesses Scott Fallar, Gretchen McKernan, and Albert Doss

Third-Party Defendants' final arguments in their motion in limine concern Third-Party Plaintiff's proposed witnesses Scott Fallar, a representative of Third-Party Plaintiff, Gretchen McKernan, a representative of Conestoga, and Albert

14

Doss, a former employee of Transnation Title Insurance Co. ("Transation"). Essentially, Third-Party Defendants' objections to these witnesses echo their complaint about Mr. Hinds: they claim that Third-Party Plaintiff should be foreclosed from calling Mr. Fallar, Ms. McKernan, and Mr. Doss at trial because it did not identify them in discovery as required by Rule 26(a) and (e). Third-Party Plaintiff disagrees, averring that it satisfied its duty to supplement its discovery responses under Rule 26(e), or that any failure to supplement was substantially justified or harmless such that the exclusionary sanction of Rule 37(c)(1) is inappropriate.

With respect to Ms. McKernan and Mr. Doss, Third-Party Defendants' allegations of non-disclosure resemble the facts underlying Third-Party Plaintiff's inclusion of Mr. Hinds as a witness. Third-Party Plaintiff provided interrogatory answers to Third-Party Defendants listing as possible witnesses "[p]ast and present employees and agents of Transnation Title Insurance Company" and "[p]ast and present employees and agents of Conestoga-Rovers & Assoc.," (Lawyers Title Interrog. Ans. 5), and noted in the Joint Final Pretrial Order that it intended to call a "[r]epresentative of Conestoga-Rovers & Associates" and a "[p]ast [e]mployee or [a]gent of Transnation Title Insurance Company," (Joint Final Pretrial Order 6). Nevertheless, it did not inform Third-Party Defendants that Ms. McKernan and Mr. Doss would serve in those capacities until February 14, 2012.

The court finds that, like with Mr. Hinds, Ms. McKernan's role as a potential witness was sufficiently apparent during the discovery period to now

15

allow Third-Party Plaintiff to use her as a witness at trial.  Third-Party Plaintiff

alleges, and Third-Party Defendants do not contest, that Ms. McKernan served

as the project manager for Conestoga on the Broadway Village project, and as

such she regularly communicated with Third-Party Defendants in the course of

their business relationship with Conestoga.  After this litigation commenced, Ms.

McKernan was deposed as Conestoga's representative pursuant to Federal Rule

of Civil Procedure 30(b)(6).  Counsel for Third-Party Defendants was present at

that deposition and questioned Ms. McKernan regarding the construction lien

recorded by Conestoga.  Once Third-Party Plaintiff learned from Conestoga that

Ms. McKernan would be serving as its representative witness at trial, it claims to

have timely disclosed that information to Third-Party Defendants.  Under these

circumstances, it appears that either Ms. McKernan's role as a witness in this

case "ha[d] otherwise been made known to [Third-Party Defendants] during the

discovery process" such that Rule 26(e) was satisfied, or an failure to explicitly

identify Ms. McKernan as a witness was harmless under Rule 37(c)(1).

Mr. Doss, however, is a different story.  Because he is a former employee

of Transnation, Third-Party Plaintiff cannot fall back on a claim that Third-Party

Defendants should have surmised his role as a representative of Transnation

during the discovery period.  In fact, Third-Party Defendants allege Mr. Doss

never surfaced in discovery as an individual with information pertinent to the

case, let alone as a potential witness.  Third-Party Plaintiff offers no evidence to

the contrary.  Instead, it contends that counsel immediately contacted Third-Party

Defendants once it identified Mr. Doss as the witness it intended to call from

16

Transnation. That may be so, but this occurred less than three weeks before

trial, and Third-Party Defendants provide no explanation, much less a

substantially justifiable one, for their failure to identify him sooner.

Furthermore, this delay cannot be considered harmless to Third-Party

Defendants, who were deprived of any opportunity to take discovery from Mr.

Doss. Third-Party Plaintiff's claim that Third-Party Defendants "could have

deposed a former Transnation employee during discovery of this matter or could

otherwise have identified such a person to contradict evidence to be a presented

by [Third-Party Plaintiff]" is no answer. (Third-Party Pl.'s Resp. Opp'n Mot. in

Limine 10.) *See Novovic v. Greyhound Lines, Inc.*, No. 2:09-CV-00753, 2012 WL

252124, at *6 (S.D. Ohio Jan. 26, 2012) ("Plaintiffs' decision not to seek

additional corporate deposition testimony from [Defendant] from one of [its

untimely disclosed witnesses] pursuant to Rule 30(b)(6) does not obviate

[Defendant's] responsibility timely to disclose its intended witnesses."). Rule

26(a) and (e) require a party to inform its opponent of potential witnesses so that

the opponent can be spared a wild goose chase after any and every individual

that may have information relevant to the party's case. In the court's view, Third-

Party Plaintiff did not fulfill its duty under Rule 26 to timely disclose Mr. Doss as a

witness, and Rule 37(c)(1) mandates that his testimony be excluded from trial.

*See, e.g.*, *Wright v. City of Chattanooga*, No. 1:10-CV-291, 2012 WL 28744, at

*9-10 (E.D. Tenn. Jan. 5, 2012).

Turning to Mr. Fallar, the circumstances are bit more complex. Third-

Party Plaintiff alleges that it previously presented Jennifer Turney as its

representative at a Rule 30(b)(6) deposition in this matter; counsel for Third-Party Defendants apparently attended that deposition, but did not ask Ms. Turney any questions. After that time, Ms. Turney left Lawyers Title's employ, and Mr. Fallar is her successor. Thus, Third-Party Plaintiff argues that its failure to identify Mr. Fallar as a witness in advance of the Joint Final Pretrial Order is substantially justified as well as harmless, given that Third-Party Defendants had the opportunity to depose Ms. Turney during discovery.

However, Third-Party Defendants claim this account is incomplete and misrepresents the actual course of discovery regarding Lawyers Title. According to them, Ms. Turney was presented in response to a Rule 30(b)(6) deposition request from Lower Town Project. A different individual, Fred Perlini, was designated as Third-Party Plaintiff's Rule 30(b)(6) representative when Third-Party Defendants noticed a deposition regarding the third-party claims. After that deposition, Third-Party Plaintiff submitted interrogatory answers confirming that it intended to call Mr. Perlini—and no other Lawyers Title representative, named or unnamed—as a witness. (Lawyers Title Interrog. Ans. 3-9.) Third-Party Defendants had no reason to believe otherwise until the filing of the Joint Final Pretrial Order, which evinced Third-Party Defendant's intent to replace Mr. Perlini with Mr. Fallar.

In light of these facts, the court cannot conclude that Third-Party Plaintiff's intended use of Mr. Fallar as a witness at trial was evident during discovery, as was arguably the case with Mr. Hinds and Ms. McKernan. Neither was Third-Party Plaintiff's failure to supplement its discovery to indicate this intent

18

"substantially justified" under Rule 37(c)(1): although the employee turnover offered by Third-Party Plaintiff might justify the substitution of Mr. Fallar for Ms. Turney, it does not shed light on why Mr. Fallar or Ms. Turney are being called instead of Mr. Perlini—a switch that Third-Party Plaintiffs do not even attempt to explain.

Furthermore, Third-Party Plaintiff cannot show that its failure to disclose Mr. Fallar is harmless.  Third-Party Defendants claim that Third-Party Plaintiff is unjustifiably attempting to change its designated representative for trial because Mr. Perlini gave unfavorable testimony at his deposition—an allegation that finds some support in the summary-judgment order.  (*See* Summ. J. Order 43-46 & n.12, Dkt. # 61 (noting "Perlini's testimony appears to support the third-party defendants' arguments" and "the Court is at an utter loss why Lawyers Title offered Perlini to testify" given that he is not employee of Lawyers Title or Transnation).)  Normally, this potential harm might be mitigated or avoided by nature of the fact that Mr. Perlini's testimony binds Third-Party Plaintiff, in the sense that it can be used to impeach or contradict Mr. Fallar's testimony.  *See, e.g.*, *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F. Supp. 2d 786, 791 (N.D. Ill. 2000).  This remedy is insufficient here, however.  Mr. Perlini's deposition testimony was notable for his lack of personal knowledge about key issues relevant to the third-party claims, such as whether any Transnation employee knew that the representations made in the affidavit or assignment agreement were false.  (*See* Summ. J. Order 45-46.)  If Mr. Fallar does have personal knowledge about the details of the Lower Town transaction, his testimony in that

19

regard may be fatally detrimental to Third-Party Defendants and would be unimpeachable based on Mr. Perlini's deposition.  *See Ruth v. A.O. Smith Corp.*, at *10 (N.D. Ohio Feb. 27, 2006) ("[W]hen a party first provides a non-responsive 30(b)(6) deponent and later tries to call a more-responsive witness at trial . . . courts have excluded the witness.").

Additionally, the fact that Third-Party Defendants were present at the deposition of Ms. Turney does not make Third-Party Plaintiff's failure to supplement harmless.  At that time, Ms. Turney, a claims officer, was testifying as Third-Party Plaintiff's Rule 30(b)(6) representative knowledgeable about Lower Town Project's claims.  Third-Party Defendants had no reason to believe that she had information relevant to the third-party claims, which revolve around the issuance of the title insurance policy rather than the claim Lower Town Project made on the policy.  (*See* Turney Dep. 11:16-14:19, Jan. 4, 2011, Dkt. # 33-7 (containing witness's repeated statements that she knows nothing about the underwriting process or the procedure for issuing policies).)  In contrast to the situations of Mr. Hinds and Ms. McKernan—where Third-Party Plaintiff had indicated that it would call an employee of those witnesses' respective businesses and discovery had revealed that they were likely to serve as those representatives—Third-Party Defendants had no reason to expect that any Lawyers Title employee would be testifying on their claims besides Mr. Perlini.  Thus, they had no incentive, and indeed no need, to obtain discovery from other Lawyers Title employees like Ms. Turney.  *See Smith v. Pfizer Inc.*, 265 F.R.D. 278, 284 (M.D. Tenn. 2010) (noting difference between party's awareness that

20

an individual exists and knowledge that the individual is a potential witness).

Third-Party Plaintiff disclosed Mr. Perlini as its representative, and the decision to

substitute Mr. Fallar at this late stage in the litigation is not harmless.  Rule

37(c)(1) requires the court to exclude Mr. Fallar as a trial witness.

### 6. Third-Party Plaintiff's Remaining Exhibits

Third-Party Plaintiff's remaining motion in limine seeks admission of all

their proposed trial exhibits to which Third-Party Defendants lodged an objection.

All of these objections, save some of those already discussed, involve a

relevancy or hearsay question that the court lacks adequate information to

determine at this juncture.  For example, the majority of the exhibits are

documents that Third-Party Defendants claim are hearsay, but that Third-Party

Plaintiff claims are admissible under the hearsay exception for records of a

regularly conducted activity.  *See* Fed. R. Evid. 803(6).  Until it hears from the

"qualified witness" that Third-Party Plaintiff will produce to testify on the status of

these documents as business records, the court cannot rule on such issues.

(*E.g.*, Third-Party Pl.'s Mot. in Limine No. 3, at 3, Dkt. # 87.)  The same goes for

the remainder of Third-Party Plaintiff's proffered exhibits not previously

addressed in this order.

At present, then, and in accordance with its rulings in Sections 1 and

Sections 4 above, the court will grant Third-Party Plaintiff's motion in limine to

admit the deposition of Mr. Hinds (Exhibit 155), the May 7, 2009 letter regarding

the Development Agreement (Exhibit 156), and the May 7, 2009 letter regarding

the Property Management Agreement (Exhibit 157).  The court will deny as

21

premature Third-Party Plaintiff's motion in limine regarding the remainder of its exhibits. At trial, Third-Party Plaintiff will have the opportunity to present these exhibits, Third-Party Defendants may voice any objections, and the court will determine their admissibility at that time.

Accordingly,

IT IS ORDERED that Third-Party Plaintiff's "Motion in Limine No. 2 Determining the Admissibility of the Deposition of John Clinton Hinds, Jr. at Trial" [Dkt. # 89] is GRANTED. The deposition of Mr. Hinds shall be admitted at trial with the redactions approved in Section 1 of this order.

IT IS FURTHER ORDERED that Third-Party Defendants' "Motion in Limine" [Dkt. # 86] is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Third-Party Defendants' request to exclude the *Conestoga* settlement agreement and to preclude testimony from witnesses Scott Fallar and Albert Doss. It is DENIED in all other respects.

IT IS FURTHER ORDERED that Third-Party Plaintiff's "Motion in Limine No. 3 for Admission of Its Trial Exhibits" [Dkt. # 87] is GRANTED IN PART AND DENIED IN PART. It is GRANTED with respect to Exhibits 155, 156, and 157. It is DENIED in all other respects, subject to Third-Party Plaintiff's ability to move for the admission of its exhibits at trial.

           s/Robert H. Cleland                        
           ROBERT H. CLELAND
           UNITED STATES DISTRICT JUDGE

Dated:  February 29, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 29, 2012, by electronic and/or ordinary mail.

s/Lisa G. Wagner
Case Manager and Deputy Clerk
(313) 234-5522